HIGGINBOTHAM, J.
| ^Defendants appeal a judgment awarding damages totaling $87,638.25 to plaintiffs, finding defendants responsible for the damages caused by defective workmanship on a construction project and attorney’s fees. For the following reasons, we reverse in part, amend, and affirm in part as amended.
FACTS
Plaintiffs, Michael and Carrie Matherne, contracted with defendants, Mayhew Barnum and his construction company, Barnum Construction, L.L.C. (Barnum L.L.C.), for the design and construction of a bulkhead, boat slip with lift, and deck with walkways at their waterfront property (hereafter sometimes referred to as “the work”) in Springfield, Louisiana. The parties agreed upon the price of $39,000.00 for the work. After the work was completed in July 2006, the Mathernes built their dream house on the river, with a walkway connecting the house to the work.[1]
Sometime in 2007, the Mathernes contacted Barnum regarding a large sinkhole that had developed near the bulkhead, along with multiple deep cracks in the landscaped areas around the bulkhead, bulging areas in the actual bulkhead, and a displaced pole that supported the upper decking of the boat slip. Despite Barnum’s two separate attempts to remedy these various problems, the Mathernes were not satisfied with, the work. In September 2008, the Mathernes contacted a civil engineer, Jesse L. Arnold, for a professional opinion regarding the stability of the bulkhead and the decking. Arnold advised the Mathernes that the bulkhead was extremely unstable, very poorly designed, and defectively constructed. Because the bulkhead was not retaining the soil, which is the purpose of designing a bulkhead, Arnold recommended the complete demolition and replacement of the | sentire bulkhead and boat slip structure, with an emphasis on restoring the eroded soil. Alarmed by the knowledge that the work was defective and needed to be completely replaced before it all collapsed and threatened their home, the Mathernes arranged for financing and contracted with Robert Cason to remove and rebuild the work for a total of $43,034.77.[2]
The Mathernes’ general dissatisfaction with the work culminated with the filing of this lawsuit on March 27, 2009. The Mathernes sought damages for breach of contract, alleging that Barnum did not design or build the work in a good and workmanlike manner, free from defects in materials and workmanship. Barnum and Barnum L.L.C. answered the suit with a general denial of all allegations and pleading the affirmative defense of prescription. Additionally, Barnum filed a peremptory exception raising the objection of prescription, which was referred to the trial on the merits.
After a bench trial on October 7, 2010, the trial court overruled Barnum’s exception of prescription, pierced the corporaté veil of Barnum L.L.C., and rendered judgment holding Barnum personally liable for *786 the damages caused by his faulty workmanship. The trial court awarded the Mathernes $43,034.00 for the work’s demolition and replacement cost, $525.00 to remove and replace electrical work, $8,380.25 for damaged landscaping replacement, $699.00 for the cost of professional engineering services, and $25,000.00 in non-pecuniary damages for emotional distress, inconvenience, and mental anguish over the defective work that the trial court found was intended for the Mathernes’ deep intellectual enjoyment. The trial court also awarded $10,000.00 to the Math-ernes for attorney’s fees, for a total judgment of $87,638.25 in favor of the Math-ernes and against Barnum and Barnum L.L.C. in solido. Barnum and Barnum L.L.C. timely appealed the trial |4court’s judgment, raising seven assignments of error surrounding the trial court’s rulings on the issues of prescription, piercing the corporate veil, best evidence of the contract, the weight given to expert testimony, and the awards for landscape replacement, non-pecuniary damages, and attorney’s fees.
PRESCRIPTION
Initially, Barnum argues the trial court erred in finding that the Mathernes’ claim had not prescribed. Barnum maintains the suit is prescribed because the work was complete in July 2006 and the Mathernes’ suit was not filed until March 2009, which was well after the one-year prescriptive period applicable for tort actions. We find no merit to this argument. The Mathernes’ cause of action against Barnum and Barnum L.L.C. is not based in tort, but rather is a cause of action for breach of a construction contract. As such, it is subject to the liberative prescription of ten years provided for in La. C.C. art. 3500.[3] Firmin, Inc. v. Denham Springs Floor Covering, Inc., 595 So.2d 1164, 1170 (La.App. 1st Cir.1991). Thus, the Matherne’s suit was timely filed.
We also note the record reflects that the trial court took into consideration the doctrine of contra non valentem, as discussed in its written reasons for judgment. However, the trial court’s conclusions regarding the date that the Math-ernes were fully apprised of the existence of their cause of action and the dispute over whether Barnum’s last attempt to repair the work was in 2007 or 2008 are irrelevant for our review purposes. It is well-settled that appeals are taken from judgments and this court examines judgments, not reasons for judgment or reasons why the trial court reached a particular result. See Greater New Orleans Expressway Com’n v. Olivier, 2002-2795 (La.11/18/03), 860 So.2d 22, 24; Huang v. Louisiana State Bd. of Trustees for State Colleges and Universities, 1599 — 2805 (La.App. 1st Cir.12/22/00), 781 So.2d 1, 6. Where the reasons for judgment are flawed, but the judgment is correct, the judgment controls. Veal v. American Maintenance and Repair, Inc., 2004-1785 (La.App. 1st Cir.9/23/05), 923 So.2d 668, 673. Accordingly, while a different prescriptive period than what was considered and reasoned by the trial court is appropriate in this case, we agree with the trial court’s result in the judgment. The trial court correctly overruled Barnum’s exception of prescription. This assignment of error has no merit.
THE CONTRACT, EXPERT TESTIMONY, AND PERSONAL LIABILITY
Barnum next argues that the trial court erred in finding that he was personally *787 liable, since the construction contract at issue was between the Mathernes and Barnum L.L.C., not Barnum personally. Essentially, Barnum maintains that the Mathernes’ claim against him is based solely on his status as the sole member of Barnum L.L.C. and, as such, he is insulated from personal liability for any debt or obligation of his company. Thus, Barnum argues that the trial court erred when it pierced the corporate veil of Barnum L.L.C. and held him personally liable for its actions. Additionally, Barnum complains that the trial court erred in not allowing a duplicate copy of the original contract to be admitted into evidence, purportedly for proof that the contract was between the Mathernes and Barnum L.L.C., not Barnum personally.
Initially, we note that the record does contain a duplicate copy of Barnum L.L.C.’s original written proposal, which was signed by Barnum, but not the Math-ernes, and was admitted into evidence without objection as part of the Mathernes’ exhibits. The proposal is on Barnum L.L.C. letterhead and states that “we” propose to furnish materials and labor for construction of the boat slip and lift, bulkhead, deck, and walkways at the Math-ernes’ property. Barnum attempted to admit another duplicate copy of the original proposal, which was identical to the [ fiMathernes’ exhibit, except that it contained what purported to be Mr. Math-erne’s signature as well as Barnum’s signature. However, Mr. Matherne testified that he did not remember signing the document, and the Mathernes objected to the admission of Barnum’s copy as evidence of the contract. The trial court did not allow Barnum’s copy to be admitted into evidence, sustaining the Mathernes’ objection on the basis that the duplicate copy was not the best evidence of the contract. We find no error in the trial court’s ruling, because the record contains no clear evidence that the original document could not be obtained, was lost, or was destroyed.[4] See Rayne v. Barrington, 575 So.2d 831, 833 (La.App. 1st Cir.1990).
After considering all of the evidence, the trial court found that an oral construction contract existed between the Mathernes and Barnum on behalf of Barnum L.L.C. We conclude that this factual finding is reasonably supported by the evidence. The existence or non-existence of a contract is a question of fact, and the trial court’s determination of this issue will not be disturbed unless manifestly erroneous or clearly wrong. Townsend v. Urie, 2000-0730 (La.App. 1st Cir.5/11/01), 800 So.2d 11, 15, writ denied, 2001-1678 (La.9/21/01), 797 So.2d 674. Similarly, the issue of whether there were corroborating circumstances sufficient to establish an oral contract is a question of fact. Pennington Const., Inc. v. R A Eagle Corp., 94-0575 (La.App. 1st Cir.3/3/95), 652 So.2d 637, 639. When evaluating the evidence needed to establish the existence or nonexistence of a contract, the trial court is allowed to make credibility determinations. See Imperial Chemicals Ltd. v. PKB Scania (USA), Inc., 2004-2742 (La.App. 1st Cir.2/22/06), 929 So.2d 84, 93, writ denied. 2006-0665 (La.5/26/06), 930 So.2d 31.
|7The parties never seriously disputed the fact that a construction contract existed. The testimony was consistent that there was an agreement for Barnum to construct the work on the Mathernes’ property for a set price fully paid by the Mathernes, with Barnum furnishing the materials and necessary labor to perform the job. Louisiana Civil Code article 2756 *788 defines a building contract as follows: “To build by a plot, or to work by the job, is to undertake a building or a work for a certain stipulated price.” See also La. C.C. arts. 1906 and 2757. Jurisprudence has consistently held that a contract involving work to be done on the owner’s land or building is a construction contract (as opposed to a sale) within the definition of Article 2756, even when the undertaker (contractor) is required to furnish some of the materials. Martin v. AAA Brick Co., Inc., 386 So.2d 987, 990 (La.App. 3d Cir.1980). The evidence shows that the Math-ernes wrote four checks totaling $39,000.00 for the work and the materials, with two checks made payable to Barnum personally and two checks made payable to Barnum L.L.C. Our review of the record confirms sufficient evidence to support the trial court’s conclusion that an oral construction contract existed between the Mathernes and Barnum and Barnum L.L.C.
The trial court additionally found, as outlined in its reasons for judgment, that Barnum L.L.C. was “merely a sham entity” at the time that the construction contract was entered into and throughout the time when the work occurred and afterward. The trial court further found it was appropriate to pierce the corporate veil of Barnum L.L.C. and hold Barnum personally responsible for the actions and inactions of Barnum L.L.C. Thereafter, the trial court determined that Barnum had not performed the construction contract in a workmanlike manner and that he had breached the contract. Barnum argues on appeal that the trial court erred in piercing the corporate veil and finding him personally liable for the Mathernes’ damages.
| ^Without a doubt, statutory law found in La. R.S. 12:1320(B) insulates a member of a limited liability company from personal liability for a debt or obligation of the limited liability company.[5] However, Subsection D of this same statute clearly provides a cause of action against a member of a limited liability company because of any breach of professional duty, as well as for any fraud or other negligent or wrongful act by such person.[6] W.J. Spano Co., Inc. v. Mitchell, 2005-2115 (La.App. 1st Cir.9/15/06), 943 So.2d 1131, 1132-33. Thus, members of limited liability companies generally may not be assessed with personal liability for the debts and obligations of their limited liability company to third parties, unless there is proof of negligence or wrongful conduct by that person. Regions Bank v. Ark-La-Tex Water Gardens, L.L.C., 43, 604 (La.App.2d Cir.11/5/08), 997 So.2d 734, 740, writ denied. 2009-0016 (La.3/13/09), 5 So.3d 119. Whether a contractor has properly performed an obligation is a question of fact. Imperial Chemicals, 929 So.2d at 93. To encourage commerce, the legislature has limited personal liability for some debts incurred or acts performed on behalf of business entities. However, La. R.S. 12:1320 was not intended to shield professionals from liability for personal negligence. Regions Bank, 997 So.2d at 740.
In this case, the Mathernes alleged that Barnum was liable individually, because he *789 was negligent in designing and building the work on their property. In its reasons for judgment, the trial court found that Barnum’s work was not performed in a workmanlike manner and then outlined several areas of defective workmanship based upon the evidence: (1) the walls of the bulkhead were not 19driven far enough into the soil to act as a retainer of the earth behind the wall; (2) the anchors were not established and planted far enough away from the wall of the bulkhead, nor were they firmly or deeply buried; (3) the piles or pylons were not sufficiently set to brace the loads required by the sundeck of the boat slip structure; and (4) the backfill for the bulkhead was of the wrong material and/or was not properly packed.
As a result of the defective work, the trial court found that the backfill dirt leaked from the bulkhead, causing sinkholes and cracking in the yard and landscaping, buckling of the bulkhead wall, warping of the pilings supporting the deck, and compromising the strength and integrity of the entire boat slip structure. It has been jurisprudentially established that, implicit in every construction contract is the requirement that the work of the contractor is to be performed in a good, workmanlike manner, free from defects in either materials or workmanship, and the work must also be suitable for its intended purpose.[7] City of Plaquemine v. North American Constructors, Inc., 2000-2810 (La.App. 1st Cir.11/8/02), 832 So.2d 447, 464, writs denied, 2003-0329 and 2003-0345 (La.4/21/03), 841 So.2d 796 and 798; Davidge v. H & H Const. Co., 432 So.2d 393, 395 (La.App. 1st Cir.1983); Lewis v. La Adrienne, Inc., 44,602 (La.App.2d Cir.8/19/09), 17 So.3d 1007,1010.
In order to recover damages from a contractor for defective workmanship, the owner must establish: (1) that defects exist, (2) that faulty materials or workmanship caused the defects, and (3) the cost of repairing the defects. Regions \ ^Bank, 997 So.2d at 737. Further, the owner has the burden of proving each element of the claim by a preponderance of the evidence. Id., 997 So.2d at 739. A trial court’s factual findings will not be reversed unless clearly wrong. A reviewing court must determine whether the factfinder’s conclusions were reasonable based upon the entire record. Stobart v. State through Dept, of Transp. and Development, 617 So.2d 880, 882-83 (La.1993). Our review of the record reveals that the trial court’s findings are reasonable and supported by the record. The evidence convinces us that the workmanship in the construction of the work was so generally defective that it could not be corrected except by removing and re-constructing the entire work.
We find that the record more than adequately demonstrates that Barnum was engaged in the construction profession when he designed and constructed the work for the Mathernes. He was not acting solely in his capacity as a member of the limited liability company. Thus, pursuant to La. R.S. 12:1320(D), Barnum was subject to personal liability arising from his own negligence in performing the construction. Consequently, we cannot say the trial court erred in concluding that *790 Barnum was personally liable for the Mathernes’ damages in this case. Furthermore, in concluding that Barnum’s negligence was the basis of his personal liability pursuant to statutory law, we pre-termit further discussion of Barnum and Barnum L.L.C.’s assignment of error concerning piercing the corporate veil. See Regions Bank, 997 So.2d at 740-41.
Additionally, we find no merit to Barnum and Barnum L.L.C.’s assignment of error regarding the trial court’s rulings on the testimony of the Mathernes’ expert witness. Our review reveals no error in the trial court’s acceptance of Arnold as an expert, who was licensed in the field of civil engineering with a specialty in soils. A trial court has great discretion in determining whether to qualify a witness as an expert, and such discretion will not be disturbed on appeal |nin the absence of manifest error. Burdette v. Drushell, 2001-2494 (La.App. 1st Cir.12/20/02), 837 So.2d 54, 65, writ denied. 2003-0682 (La.5/16/03), 843 So.2d 1132. Further, a trial court may accept or reject in whole or in part the opinion expressed by an expert. Id. Such testimony is to be weighed the same as any other evidence. Shows v. Shoney’s, Inc., 98-1254 (La.App. 1st Cir.7/29/99), 738 So.2d 724, 737. The effect and weight to be given expert testimony is within the broad discretion of the trial court. Id. Arnold testified that his civil engineering practice focused exclusively on soil and structures placed on soil. He had examined the Mathernes’ property before and after the demolition and rebuild of the work. Arnold determined that the fill dirt used by Barnum had clods that allowed voids where water could cause sinkholes. Arnold opined that someone building a bulkhead should be familiar with the appropriate way to backfill the bulkhead with dirt and the proper depth for the bulkhead walls. Arnold also testified that once a bulkhead wall fails, the soil deterioration will continue inland, as in this case, toward the Mathernes’ house, which must be addressed. There was no contradictory expert evidence presented. We conclude that the trial court did not clearly err or abuse its discretion when it admitted Arnold’s testimony and accepted his opinion regarding the defective workmanship and the necessity that the entire work be demolished and rebuilt.
DAMAGES
In two other assignments of error, Barnum and Barnum L.L.C. argue that the trial court erred in awarding non-pecuniary damages for the work and damages for landscape replacement.[8] The measure of damages in this case is governed by La. C.C. art. 2769, which imposes liability for “the losses that may ensue from [the undertaker’s] non-compliance with his contract.” This has been interpreted in the | ^jurisprudence to mean the cost of repairing any defects or of completing the work. Guitreau v. Juneau, 479 So.2d 431, 434 (La.App. 1st Cir.1985); Regions Bank, 997 So.2d at 739.
However, where the defects are such that they cannot be corrected except by removing and replacing the construction, the jurisprudential remedy is to award whatever it takes to place the homeowner in the position he deserved to be in when the construction was completed, as if the obligation had been fulfilled; in other words, the owner is entitled to the cost of repairs necessary to convert the unsound structure into a sound one or the amount paid to remedy the defect. See Scheppegrell v. Barth, 239 La. 42, 50-51, 117 So.2d 903, 906 (1960); Construction Affiliates, Inc. v. Pullen, 2009-1418, p. 3 (La.App. 1st *791 Cir.7/9/10), 2010 WL 2712695 (unpublished), writ denied, 2010-1850 (La.10/29/10), 48 So.3d 1091; Industrial Roofing & Sheet Metal Works, Inc. v. J.C. Dellinger Memorial Trust, 32,048 (La.App.2d Cir.8/20/99), 751 So.2d 928, 939, writs denied, 99-2948 and 99-2958 (La.12/17/99), 752 So.2d 166; Martinez v. Reno, 99-114 (La.App. 5th Cir.9/15/99), 742 So.2d 1014, 1016. The Mathernes had the burden of proving each element of their claim by a preponderance of the evidence. See Regions Bank, 997 So.2d at 739. The standard of review for a damage award for breach of contract is whether the trial court abused its discretion. Id.
In this case, the Mathernes introduced into evidence an affidavit of their landscapes Kim Stewart, who provided the original landscaping at the Mathernes’ property. Stewart estimated the cost to replace the original landscaping would be $8,380.25. The Mathernes and Arnold testified regarding the condition of the landscaping that was damaged due to the cracked and sinking ground resulting from Barnum’s defective bulkhead work. Barnum did not rebut the evidence of these damages. In a case such as this, the cost of replacing the landscaping was a proper element of damages, because the entire replacement of the work was | ^obviously necessary to cure the defects, and the massive amount of replacement work resulted in further damage to the landscaping. Accordingly, we find no error in the trial court’s conclusion regarding the necessity of awarding the cost of replacement landscaping. We also find no abuse of discretion in the amount awarded for replacing the Mathernes’ landscaping.
As for non-pecuniary damages, our review of the jurisprudence reveals that the Mathernes are indeed entitled to damages for mental anguish, distress, inconvenience, and aggravation if they proved that the contract was intended to gratify a significant non-pecuniary interest and that Barnum should have known his failure to perform would cause the Math-ernes those types of damages. See Young v. Ford Motor Co., Inc., 595 So.2d 1123, 1133 (La.1992). See also Guitreau, 479 So.2d at 435. Damages for non-pecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a non-pecuniary interest and, because of the circumstances surrounding the formation or the non-performance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss. La. C.C. art. 1998. Where factually appropriate, non-pecuniary damages may be proven and recovered in a breach of contract case. Guitreau, 479 So.2d at 435.
Barnum and Barnum L.L.C. argue that the evidence showed the significant non-pecuniary interest in this ease involved only the Mathernes’ “dream home,” and not the work on the bulkhead, boat slip, and deck. We find, however, that the record reasonably supports the trial court’s conclusion that the work was also meant to be a major source of intellectual enjoyment for the Mathernes as they lived in their “ ‘dream home’ with beautiful landscaping and water access by boat.” Whether the gratification of some non-pecuniary interest is the principal object of a contract is a question of fact. Johnston v. Norcondo, 572 So.2d 203, 205 (La.App. 1st Cir.1990), writ denied, 577 So.2d 13 (La.1991); Taylor v. Burton, 97-J134814 (La.App. 3d Cir.3/6/98), 708 So.2d 531, 535. We find no manifest error in the trial court’s determination that the Mathernes suffered a non-pecuniary loss as a result of Barnum’s breach of the construction contract and that Barnum should have known that his defective workmanship would cause that kind of loss to the Mathernes.
*792 When damages are insusceptible of precise measurement, much discretion is left to the court for the reasonable assessment of those damages. La. C.C. art. 1999. The trial court awarded the Math-ernes $25,000.00 for non-pecuniary damages; however, we find that amount to be abusively high. Therefore, finding some merit in this assignment of error, we will reduce the amount awarded for non-pecuniary damages to a total award of $5,000.00 for the Mathernes’ mental anguish, emotional distress, aggravation, and inconvenience. As amended, we affirm the award for non-pecuniary damages.
ATTORNEY’S FEES
In the last assignment of error, Barnum and Barnum L.L.C. challenge the trial court’s award of the attorney’s fees on the grounds that neither the terms of the contract nor positive statutory law authorize such an award in this case. The Math-ernes do not dispute that the award of attorney’s fees was in error. _ There is no evidence that the oral contract at issue provided for such recovery by either party. And no particular statutory authority allowing for recovery of attorney’s fees in this situation has been cited. As a general rule, attorney’s fees are not recoverable by a successful litigant unless provided for by contract or statute. City of Plaquemine, 882 So.2d at 465. See also Burdette, 837 So.2d at 70. Thus, the $10,000.00 attorney’s fee award must be reversed.
CONCLUSION
For the reasons outlined above, the judgment of the trial court is reversed in part to eliminate the attorney’s fees award, amended in part to reduce the full |15amount awarded for non-pecuniary damages to $5,000.00, for a total damage award of $57,638.25 in favor of plaintiffs, Michael and Carrie Matherne, and against defendants, Mayhew Barnum and Barnum Construction, L.L.C., in solido. As amended, the remainder of the trial court’s judgment is affirmed. Costs of this appeal are to be shared equally.
REVERSED IN PART, AMENDED IN PART, AND AS AMENDED, AFFIRMED.
CARTER, C.J., dissents with reasons.
PARRO, J., concurs in part and dissents in part and will assign reasons.
GUIDRY, J., concurs.

. Another contractor, Roger Gill, actually built the Mathernes’ home in 2007. The Mathernes stayed at the house on weekends until they permanently moved into their new home in July 2008.

. Some of the items/materials were salvaged and reused, resulting in a slightly lower contract price than what was originally estimated for the removal and rebuild work.

. Louisiana Civil Code article 3500 states:
"An action against a contractor or an architect on account of defects of construction, renovation, or repair of buildings and other works is subject to a liberative prescription of ten years.” (Emphasis added.)

. The testimony of Barnum and his wife, Kristie Barnum, revealed that some of Barnum L.L.C.'s documents had been destroyed while in storage, but there was no specific reference to the whereabouts of the original proposal outlining the work at issue.

. Louisiana Revised Statutes 12:1320(B) provides that, except as otherwise set forth in the law, "no member ... of a limited liability company is liable in such capacity for a debt, obligation, or liability of the limited liability company.”

. Louisiana Revised Statutes 12:1320(D) provides that this provision shall not "be construed as being in derogation of any rights which any person may by law have against a member ... of a limited liability company because of any ... breach of professional duty or other negligent or wrongful act by such person.”

. The basic law in regard to a contractor’s liability for failure to properly perform a construction contract is found in La. C.C. art. 2769, as follows:
If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.
Additionally, La. C.C. art. 1994 provides that an obligor is liable for the damages caused by his failure to perform a conventional obligation as a result of non-performance, defective performance, or delay in performance.

. Barnum and Barnum L.L.C. do not complain about the damages awarded for demolishing, removing, and replacing the work, including electrical and engineering services.